IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MILLER MENDEL INC., a Washington Corporation, and TYLER MILLER, an Oregon resident,<br><br>          Plaintiffs,<br><br>  vs.<br><br>ALASKA STATE TROOPERS, an agency of the State of Alaska, and JAMES E. COCKRELL, Commissioner of the State of Alaska Department of Public Safety,<br><br>          Defendants. | No. 3:21-cv-0129-HRH |

O R D E R

Motion to Stay

Defendants move to stay this action pending resolution of a related action in the United States District Court for the Western District of Oklahoma.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 18.

[2]Docket No. 21.

-1-

Background

"Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2. . . ."[3] Plaintiffs allege that "[t]he '188 Patent, which is entitled 'Background Investigation Management Service,' was issued on August 7, 2018."[4] "Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler Miller[.] Miller Mendel has an exclusive license granted by Mr. Miller of all right and interest to the '188 Patent with the right to sublicense to third parties[.]"[5]

Plaintiffs allege that "[d]efendant Alaska State Troopers under the direction and/or authority of Defendant Commissioner [James] Cockrell, uses a product, the Guardian Alliance Technologies investigation software platform ('the Guardian Platform'), which infringes one or more claims of the '188 Patent[.]"[6] In their amended complaint, plaintiffs assert two counts.[7] In Count 1, which is asserted against the Alaska State Troopers only, plaintiffs seek a declaration "that Alaska's use of the Guardian Platform infringes at least Claim 1 of the '188 Patent and thereby constitutes direct and/or indirect patent infringe-

---

[3]Amended Complaint at 2, ¶ 1, Docket No. 20.

[4]Id. at 5, ¶ 19.

[5]Id. at 2, ¶ 2.

[6]Id. at 6, ¶ 24.

[7]In their original complaint, plaintiffs had asserted Alaska Tort Claims Act claims and a takings claim. These claims have been omitted from their amended complaint.

-2-

ment[.]"[8]  Plaintiffs seek injunctive relief "enjoining the State of Alaska to cease its ongoing infringing activities, to wit: using the infringing Guardian Platform, and to refrain from using the Guardian Platform in the future in any manner which infringes any claim of the '188 Patent" and "enjoining the State of Alaska to disclose all payments to Guardian Alliance Technology Inc. and any other third party made by Alaska for Alaska's use of the infringing Guardian Platform."[9]  In Count 2, which is asserted against Cockrell only, plaintiffs seek a declaration "that the Department of Public Safety's use of the Guardian Platform infringes at least Claim 1 of the '188 Patent and thereby constitutes direct and/or indirect patent infringement under the Patent Act[.]"[10]  Plaintiffs seek injunctive relief

> enjoining Commissioner Cockrell, by and through his authority over the State of Alaska Department of Public Safety and the Divisions and employees thereof, to cause the Department of Public Safety, including the Division of the Alaska State Troopers, to refrain from using the Guardian Platform in the future in any manner which infringes any claim of the '188 Patent, including at least not renewing any contract or license with GAT to use the infringing Guardian Platform in any manner which would infringe any claim of the '188 Patent.[11]

Plaintiffs commenced this action on May 28, 2021.  This is the third infringement action that plaintiffs have commenced in recent years related to the '188 Patent.

---

[8]Amended Complaint at 5, ¶ 15, Docket No. 20.

[9]Id. at 5, ¶¶ 16-17.

[10]Id. at 10, ¶ 35.

[11]Id. at 10, ¶ 36.

On October 9, 2018, plaintiffs filed a patent infringement action in the United States District Court of Western Oklahoma. In this action, plaintiffs have asserted patent infringement claims against the City of Oklahoma City, which, like defendants in this case, is alleged to be a customer of Guardian Alliance Technologies ("GAT") and is alleged to be infringing one or more claims of the '188 Patent.[12] In their second amended complaint in the Oklahoma action, plaintiffs have also asserted non-patent infringement claims against GAT, namely a claim for defamation and a declaratory judgment claim of no inequitable conduct.[13] Plaintiffs and the City of Oklahoma City have submitted their claim construction briefing but the court has not entered a claim construction order and no <u>Markman</u> hearing has been scheduled. Although GAT is not actively participating in the claim construction phase of the case since infringement claims have not been brought against it, defendants contend that GAT is contractually obligated to indemnify Miller Mendel's claims of patent infringement against the City of Oklahoma City.

On February 1, 2021, plaintiffs filed a patent infringement action in the United States District Court of Oregon. In the Oregon action, plaintiffs have asserted a patent infringement claim against Washington County, Oregon and the Washington County Sheriff's Office, which, like defendants in this case, are alleged to be customers of GAT and to be infringing

---

[12]Second Amended Complaint at 4, ¶ 15, Exhibit 1, Declaration of Evan W. Talley in Support of Defendants' Motion to Stay, which is appended to Defendants State of Alaska's Motion to Stay [etc.], Docket No. 18.

[13]<u>Id.</u> at 7-10, ¶¶ 26-39.

the '188 Patent.[14] On April 2, 2021, the Oregon action was stayed "because the dispute . . . involves the same patent, product, and ultimate indemnitor as the earlier-filed, related action currently pending in the U.S. District Court for the Western District of Oklahoma[.]"[15]

Pursuant to the "first-to-file" rule, defendants now move to stay this action pending resolution of the Oklahoma action.

Discussion

"The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1239 (9th Cir. 2015). "The first-to-file rule is intended to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly.'" Id. (quoting Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir. 1991)). "When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'" Id. at 1240 (quoting Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 604 (5th Cir.1999)). "The first-to-file rule may be applied 'when a complaint involving the same parties and issues has already been filed in another district.'" Id. (quoting Alltrade, 946 F.2d at 625). "Thus, a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." Id.

---

[14]Complaint for Patent Infringement at 3, ¶ 12, Exhibit 3, Talley Declaration, which is appended to Defendants State of Alaska's Motion to Stay [etc.], Docket No. 18.

[15]Exhibit 4 at 2, Talley Declaration, which is appended to Defendants State of Alaska's Motion to Stay [etc.], Docket No. 18.

-5-

But before considering these three factors, plaintiffs contend that the court must consider whether defendants have established a "clear case of hardship or inequity[.]" Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) (citation omitted). Plaintiffs' contention, however, is incorrect. Dependable Highway Express involved a Landis stay, not a stay pursuant to the first-to-file rule. A Landis stay is based on the principle that "a district court has discretionary power to stay proceedings in its own court. . . ." Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005). The factors the court considers when deciding whether a Landis stay is appropriate are:

> (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

Erceg v. LendingClub Corp., 475 F. Supp. 3d 1071, 1074 (N.D. Cal. 2020 (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)). Here, defendants have not moved for a Landis stay; they have moved for a stay pursuant to the first-to-file rule.

Turning then to that issue, the first factor requires that the court consider the chronology of the lawsuits. There can be no dispute that the Oklahoma action was filed prior to the instant action. Thus, the first factor weighs in favor of staying this action pursuant to the first-to-file rule.

The second factor requires the court to consider the similarity of the parties. "[C]ourts have held that the first-to-file rule does not require exact identity of the parties." Kohn Law

Group, 787 F.3d at 1240. "Rather, the first-to-file rule requires only substantial similarity of parties." Id.

Plaintiffs argue that the parties in this action and the Oklahoma action are not substantially similar because there is no overlap in defendants. Plaintiffs argue that the defendants in both cases could not be more different, given that they are different entities in different jurisdictions which commenced and conducted their infringing activities independently of each other. Plaintiffs argue that this case is not like Kohn Law Group, the case on which defendants rely.

"In Kohn, a law firm brought an action against a property owner on behalf of a client whom the owner was suing in a first-filed interpleader action, but left out the other party sued in the interpleader action." Brice v. Plain Green, LLC, 372 F. Supp. 3d 955, 975 (N.D. Cal. 2019). "Kohn Law argue[d] that the parties [were] not substantially similar . . . because a defendant in the Mississippi interpleader action—King Construction—[was] not named in the present action." Kohn Law Group, 787 F.3d at 1240. The Ninth Circuit rejected that argument because "[a] contrary holding could allow a party such as Kohn Law to skirt the first-to-file rule merely by omitting one party from a second lawsuit. We conclude that the omission of King Construction from the present action does not defeat application of the first-to-file rule." Id.

But, here, according to plaintiffs, they have not added or omitted a defendant from the second-filed action. Rather, they have sued entirely different defendants. As such, plaintiffs argue that the parties in this case and the Oklahoma case are not substantially similar.

Although there is not an overlap of defendants between this case and the Oklahoma case, the parties in the actions are nonetheless substantially similar. It is sufficient that the plaintiffs are the same in both cases and that the defendants in both cases are customers of GAT accused of infringing the same product. "Courts have found that if the parties are not identical in the two related actions, they are 'substantially similar' under the first-to-file rule if they represent the same interests." Aqua Connect, Inc. v. SHI Int'l Corp., Case No. CV 19-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019). Here, the defendants in both cases arguably represent the same interests in that they all "(1) seek to invalidate the Patent[]-In-Suit, (2) seek a finding of non-infringement of th[at] patent[], and (3) [purchased] the exact same accused product[]." Id. Thus, the second factor weighs in favor of a stay.

The third factor requires the court to consider whether the two cases involve similar issues. "The issues in both cases . . . need not be identical, only substantially similar." Kohn Law Group, 787 F.3d at 1240. "To determine whether two suits involve substantially similar issues, [the court] look[s] at whether there is 'substantial overlap' between the two suits." Id. at 1241.

-8-

Plaintiffs argue that while there may be a similarity of issues between this case and the Oklahoma case, defendants have not agreed to be bound by the outcome of the Oklahoma case. Without such an agreement, plaintiffs argue that the claims in this case cannot be considered substantially similar to the claims in the Oklahoma case.

Plaintiffs' argument fails. The similar issues requirement is met "'in patent infringement matters where the actions in question involve the same patent and the same allegedly infringing product[.]'" Aqua Connect, 2019 WL 8883452, at *4 (quoting Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)). Both the Alaska and the Oklahoma actions involve the '188 patent and the Guardian platform. Thus, the third factor weighs in favor of a stay.

Although all three factors weigh in favor of a stay of this action pursuant to the "first-to-file" rule, "district courts can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity." Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). For example, in Church of Scientology of California v. United States Department of Army, 611 F.2d 738, 750 (9th Cir. 1979), the court dispensed with the first-to-file rule in large part because the second-filed case had "already progressed to a judgment on the merits, an appeal, and a remand." An exception to the first-to-file rule can also be made in cases involving "bad faith, anticipatory suit, and forum shopping[.]" Alltrade, 946 F.2d at 628 (internal citations omitted).

Plaintiffs first argue that the court should dispense with the first-to-file rule because of the impact that McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), has had on federal district courts in Oklahoma. In McGirt, "the Court held that the Creek reservation, encompassing a significant portion of northeastern Oklahoma, . . . remained 'Indian country' under the" Major Crimes Act "and, accordingly, that the State of Oklahoma lacked authority to prosecute Native Americans for crimes committed against other Native Americans committed thereon." Cayuga Nation v. Tanner, --- F.4th ---, 2021 WL 3160077, at *13 (2nd Cir. 2021). Plaintiffs contend that this decision has created "an immediate backlog of cases in the Oklahoma federal courts from the large volume of criminal and civil cases transferred from state to federal jurisdiction, as well as the reopening of past judgments that had been decided in state courts – judgments which may now have to be retried in Oklahoma federal courts."[16] Plaintiffs contend that as a result of McGirt, the Oklahoma action is basically stayed. They argue that this means there is "no concrete timeframe (much less a reliable estimate) for how long defendants' requested stay will last" and thus "equitable considerations merit proceeding with this case." Brice, 372 F. Supp. 3d at 976.

The impact of the McGirt decision on federal courts in Oklahoma is not a sufficient reason for the court to dispense with the first-to-file rule. While there may be some delay in the federal district courts in Oklahoma because of McGirt,[17] civil cases in the Western

---

[16]Plaintiffs' Opposition to Defendants' Motion to Stay at 3, Docket No. 21.

[17]There has also undoubtedly been some delay due to the COVID pandemic as there
(continued...)

-10-

District of Oklahoma have not ground to a halt as plaintiffs suggest. In fact, defense counsel represents that he "just recently completed a live civil jury trial in the Western District of Oklahoma the second week of July 2021."[18] Moreover, if plaintiffs are unhappy with the pace at which the Oklahoma case is proceeding, then they should bring a motion to that court asking it to set a schedule for completing the claim construction phase of the case.

Plaintiffs also seem to argue that the court should dispense with the first-to-file rule in this instance because defendants have not agreed to be bound by the Oklahoma action. Plaintiffs cite to Sillage LLC v. Kenrose Perfumes Inc., Case No. 8:14–cv–02043-CAS(RNBx), 2015 WL 3649605 (C.D. Cal. June 9, 2015), in support of this argument. There, Sillage filed suit against three defendants (Europerfumes, La Peer, and FragranceNet) alleging that Europerfumes was infringing its "intellectual property rights by marketing and selling knock-off versions of plaintiff's distinctive perfume bottles." Id. at *1. Europerfumes was the manufacturer of the alleged infringing bottles and La Peer and FragranceNet were retailers who purchased bottles from Europerfumes. Id. Sillage had filed another suit (also in the Central District of California) against Europerfumes and another manufacturer. Id. La Peer and FragranceNet moved to sever Sillage's claims against them and then to stay those claims. Id. "The thrust of the retail defendants' motions to stay [was]

---

[17](...continued)
has been in all federal district courts.

[18]Defendants State of Alaska Reply in Support of Motion to Stay at 3, Docket No. 23.

-11-

that the claims against them are peripheral to those against Europerfumes, and that the claims against La Peer and FragranceNet could be more efficiently resolved after the claims against Europerfumes have been litigated." Id. at *5. The court granted the motions to stay because although it was "not persuaded that staying litigation against a downstream defendant will invariably be the most efficient course, . . . it [is] justified in this case, largely because each retail defendant has agreed to be bound by the results of litigation against Europerfumes." Id. at *6.

But, here, plaintiffs argue that defendants in this action have not agreed to be bound by the results of the Oklahoma action. In particular, plaintiffs contend that defendants have not agreed to be bound by the Oklahoma court's claim construction. Plaintiffs argue that this means that defendants could relitigate the questions of infringement and perhaps even validity. Plaintiffs cite to Kahn v. General Motors Corporation, 889 F.2d 1078 (Fed. Cir. 1989), in support of this argument.

There, Kahn was the inventor of the '994 patent. Id. at 1078. On April 29, 1988, he brought suit against General Motors, alleging that its "manufacture and sale of certain AM stereo receivers" infringed two claims of the '994 patent. Id. On May 27, 1988, Motorola brought an action in Illinois "against Kahn and Hazeltine Research, Kahn's licensee, seeking judgment that the '994 patent [was] invalid, unenforceable, and not infringed by Motorola or by AM stereo receiver manufacturers, such as General Motors[.]" Id. The New York action was stayed in favor of the Illinois action. Id. at 1079. On appeal, Kahn argued that

-12-

the New York court had abused its discretion in staying the New York action. Id. at 1080. The court of appeals agreed, finding that the district court had abused its discretion in applying the "customer suit" exception to the first-to-file rule. Id. at 1081. This exception applies "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." Id. The court of appeals found that the "customer suit" exception did not apply because "Motorola [was] not a manufacturer, user, or seller of [the] receivers" at issue, which meant that there was no basis for Motorola to be liable for infringement. Id. Thus, "[w]ere Kahn to prevail against Motorola on the issues raised in Illinois, he would still have to relitigate the question of infringement against General Motors, and perhaps also of validity." Id. Plaintiffs argue that similarly here, because defendants have not agreed to be bound by the Oklahoma action, they will potentially be able to relitigate the questions of infringement and validity.

But, as defendants point out, "'once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel.'" Sillage LLC, 2015 WL 3649605, at *6 n.5 (quoting Mendenhall v. Barber–Greene Co., 26 F.3d 1573, 1577 (Fed. Cir. 1994)). Even though defendants in this case have not agreed to be bound by the Oklahoma case, it is quite possible that they would not be able to relitigate whether the '188 Patent is valid or whether the Guardian platform

-13-

infringes any claims of the '188 Patent. The fact that defendants have not agreed to bound by the results in the Oklahoma action does not warrant dispensing with the first-to-file rule.

Plaintiffs next argue that the court should dispense with the first-to-file rule because they will be prejudiced by a stay. Plaintiffs contend that a "delay in obtaining resolution on the merits means that [they are] effectively excluded from competing in this particular market. . . ."[19]

The court is not convinced that plaintiffs will be prejudiced if this action is stayed. As defendants suggest, plaintiffs may have filed this action because they are frustrated by the lack of progress in the Oklahoma case, but plaintiffs could have avoided this problem by bringing suit against GAT "where it maintains a 'regular and established place of business[,]'" which is in the Eastern District of California.[20] Plaintiffs made a tactical decision to file their first infringement suit in Oklahoma against a GAT customer and plaintiffs now have to live with that decision. Plaintiffs are "in no position to complain of prejudice or tactical advantage from merely being obliged to conclude what [they] began in [the first] forum before involving another federal court in a dispute involving the same patent and product, if not the same parties." Portfolio Technologies, Inc. v. Intellx Inc., Case No. 1:05-CV-159, 2005 WL 1189604, at *5 (W.D. Mich. May 19, 2005).

---

[19]Plaintiffs' Opposition to Defendants' Motion to Stay at 11, Docket No. 21.

[20]Defendants State of Alaska's Reply in Support of Motion to Stay at 5-6, Docket No. 23.

-14-

In sum, plaintiffs have not shown that there is any reason for the court to dispense with the first-to-file rule. This action is thus stayed pending resolution of the Oklahoma action.

Plaintiffs are concerned that such a stay may be indefinite and point out that the Ninth Circuit has observed that there is a "general policy favoring stays of short, or at least reasonable, duration[.]" Dependable Highway Exp., 498 F.3d at 1067. But, there is no reason to think that the stay in this case will be for an unreasonable amount of time. Should the length of the stay start to approach what might be considered an unreasonable duration, plaintiffs can always move to lift the stay at that juncture.

Plaintiffs also request that the court allow fact discovery relating to infringement and damages to go forward, but granting such a request would defeat the main purpose of a stay. Moreover, because plaintiffs are no longer seeking damages, but rather only injunctive and declaratory relief, there is no reason to allow them to take discovery on damages.

## Conclusion

Defendants' motion to stay[21] is granted. This case is stayed pending resolution of the Oklahoma case.

DATED at Anchorage, Alaska, this 19th day of August, 2021.

/s/ H. Russel Holland
United States District Judge

---

[21]Docket No. 18.